## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CHAUDHRY M. SHOUQ,

          Plaintiff,

  v.

NORBERT E. MITCHELL CO., INC.,

          Defendant.

3:18-cv-00293 (CSH)

**AUGUST 30, 2018**

## RULING ON DEFENDANT'S MOTION TO DISMISS
## AND MOTION TO STRIKE [DOC. 22]

**HAIGHT, Senior District Judge:**

Plaintiff Chaudhry M. Shouq ("Plaintiff") brings this action *pro se* against Defendant Norbert E. Mitchell Co., Inc. ("Defendant"), his former employer. Plaintiff alleges that, based on his national origin, he was subjected to a hostile work environment, discriminated against, and constructively discharged from his position. Plaintiff brings statutory claims under Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. §§ 2000e, *et seq*. Defendant now moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and moves to strike certain portions of the complaint pursuant to Rule 12(f). Plaintiff resists the motions. This Ruling resolves them.

## I.     BACKGROUND[1]

Plaintiff, an individual of Pakistani descent, was hired by Defendant in or around October

---

[1] The facts recounted here are derived from the allegations in Plaintiff's *pro se* complaint (Doc. 1), and are assumed to be true, for the purposes of this motion.

1999. Complaint, Doc. 1 ¶ 4-5. The terms and conditions of Plaintiff's employment state that the company will not discriminate against any person based on national origin in selection or treatment, nor will the company tolerate any abusive or threatening language, or harassment. *Id.* ¶ 14. Starting in or around 2004, Plaintiff's supervisor, Henry Stolz, and the assistant supervisor, Joe Ronka, started treating Plaintiff differently than the other employees, who were American. *Id.* ¶ 6.

In August 2004, Plaintiff's supervisor forced him to work at a different location. *Id.* ¶ 7(a). Although he was promised additional money to work there, he never received it. *Id.* In or around 2005, Plaintiff's supervisor forced him to sign a letter, the effect of which would strip Plaintiff of his managerial position. *Id.* ¶ 7(b). After Plaintiff confronted the supervisor, the supervisor ripped up the letter and asked Plaintiff not to tell anyone about it. *Id.*

In or around 2009, Plaintiff's supervisor and the assistant supervisor forced him to sign a letter regarding a three-day suspension. *Id.* ¶ 7(c). Plaintiff was told that he was being suspended for opening the store late the previous Sunday, and for writing down the wrong time on the payroll sheet. *Id.* Plaintiff explained that he had opened the store on time. *Id.* Plaintiff's account was confirmed with the alarm company, which reported that they had been having issues with their system. *Id.* After hearing from the alarm company, Plaintiff's supervisors ripped up the three-day suspension letter and left the store. *Id.*

In or around December 2015, Ronka presented Plaintiff with a Christmas bonus check that was for less money than Plaintiff had been promised. *Id.* ¶ 7(d). After asking Ronka about the discrepancy, Ronka yelled at Plaintiff and insulted him, humiliating him in the process. *Id.* That same year, when the other employees received a 50 cent to one dollar raise, Plaintiff only received a ten cent raise. *Id.* ¶ 7(e). When he inquired about the raise, Plaintiff was told by Ronka that he was

lucky to even receive a ten cent raise. *Id.* In December 2016, Plaintiff was paid a much smaller Christmas bonus. *Id.* ¶ 7(f).[2]

In or around May 2016, Plaintiff received a "written and final reprimand for nothing." *Id.* ¶ 7(g); *see also* Doc. 16 at 7.The company had just fired an employee who worked in the afternoons at Plaintiff's location, after determining that the employee was stealing. *Id.* Plaintiff strongly denied knowing anything about the ongoing thefts at his location but he still received a reprimand. *Id.*

On or about December 3, 2016, Plaintiff arrived at work and realized he had forgotten his key to open the store. *Id.* ¶ 8. Plaintiff notified Ronka that he was going to go back home to look for his key. *Id.* When Plaintiff got home, he was unable to find the key. *Id.* Plaintiff returned to the store, and found Ronka waiting for him there. *Id.* Ronka informed Plaintiff that if he did not find his key, he would be in trouble. *Id.* ¶ 9.  Plaintiff went back home to look for the key, and found it underneath his bed. *Id.* When Plaintiff returned to work with the key, Ronka started to yell and swear at him. *Id.* ¶ 10. Ronka told Plaintiff that he was suspended, and threatened to call the police if he did not leave. *Id.* Plaintiff explained that he was ready to work and the key had been located. *Id.* In response, Ronka threw Plaintiff's bag of medications onto the floor, along with his blood pressure cuff. *Id.* Ronka's outburst was captured on the Defendant's surveillance video. *Id.*

Two days later, Plaintiff spoke with Andy Mongan, Defendant's Human Resources Officer. *Id.* ¶ 11. Plaintiff made Mongan aware of the December 3rd incident involving Ronka. *Id.* Plaintiff told Morgan that Ronka would not have treated an American employee the way he treated Plaintiff.

---

[2] In Defendant's reply papers, Defendant responds to Plaintiff's argument in opposition to dismissal regarding this allegation, contending that it was "entirely new" and "not contained in his Complaint." Doc. 24 at 5. To the contrary, the allegation that Plaintiff received a smaller bonus than promised in December 2016 is clearly alleged in Plaintiff's complaint. *See* Doc. 1 ¶ 7(f).

*Id.* Mongan stated that "Ronka is your boss and he can do anything to you." *Id.* Dissatisfied with that response, the same day, Plaintiff spoke to the owner of the business, Matt Mitchell. *Id.* ¶ 12. Mitchell told Plaintiff that he would look into the incident, review the video, and speak to the other supervisors. *Id.*

On December 7 or December 8, 2016, Mongan told Plaintiff that Mitchell wanted to see him. *Id.* ¶ 13. Plaintiff met with Mitchell, who complimented Plaintiff on being a good employee over the past eighteen years. *Id.* Plaintiff informed Mitchell that the December incident was not the first incident that he had with Ronka. *Id.*

Following the December 3, 2016, incident with Ronka, Plaintiff continued to work. However, he experienced stress from the incident and the working environment, and his health deteriorated as a result. *Id.* ¶ 16;[3] *see also* Doc. 16 at 2-4. On January 19, 2017, Plaintiff filed Connecticut Commission on Human Rights and Opportunities ("CHRO") and United States Equal Employment Opportunity Commission ("EEOC") complaints of harassment and discrimination based on national origin (Pakistan) against Defendant. *Id.* ¶ 15. Then, on February 13, 2017, Plaintiff was constructively discharged "due to the ongoing harassment and discrimination" he faced. *Id.* ¶ 17. Plaintiff's position with Defendant at that time was a gas station manager (Defendant is in the heating service business in the Danbury, Connecticut area). On August 1, 2017, Plaintiff filed additional CHRO and EEOC complaints for constructive discharge. *Id.* ¶ 18.

"Upon information and belief, no other non-basis employees were subjected to similar harassment and discrimination in the manner that [Plaintiff] was," due to his national origin and

---

[3] The numbered paragraphs in Plaintiff's complaint restart after paragraph 14. For these purposes, the Court continues the numbering from paragraph 14 on.

ancestry. *Id.* ¶ 19.

## II.  STANDARD OF REVIEW

"On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to support the claims.'" *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles". *Id*. at 678.

First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in the favor of the non-moving party. *See id.; see also Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citation omitted). The presumption of truth does not extend, however, to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, "a complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (quotation marks omitted). "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

This is a *pro se* complaint. With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally" (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (in reviewing a *pro se* complaint, the court "must liberally construe [the] pleadings, and must interpret [the] complaint to raise the strongest arguments it suggests").

"However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Legeno v. Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (quotation marks and citation omitted). However, despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678).

### III. DISCUSSION

### A. Motion to Strike

Defendant moves to strike two paragraphs of Plaintiff's complaint, and the entirety of the complaint's accompanying exhibits. Doc. 22-1 at 12-17. Defendant contends that paragraphs 11 and 13 of the complaint "refer to conduct and settlement discussions that occurred during the mediation process of an administrative proceeding at the CHRO," and they should therefore be "stricken as immaterial and potentially prejudicial." *Id.* at 12. Defendant argues that the exhibits attached to Plaintiff's complaint, including medical records and "one document purporting to be a disciplinary notice," should be stricken because the documents do not serve to clarify the pleadings; are not incorporated by reference into the body of the complaint; contain Plaintiff's personal information; and do not fall within the "commonly held definition of a written instrument." *Id.* at 16-17. Plaintiff argues that his medical exhibits offer proof of Plaintiff's damages resulting from Defendant's harassment, discrimination, and constructive discharge. Doc. 23-1 at 6.

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading[.]" Fed. R. Civ. P. 12(f). Motions to strike are generally "viewed unfavorably and [are] rarely granted." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (quotation marks and citation omitted) (collecting cases); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing." (citation omitted)). Ultimately, it is within the district court's discretion to determine whether to grant or deny a motion to strike. *See Tucker*, 936 F. Supp. 2d at 15;

*Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 102 (D. Conn. 2008).

To prevail on a motion to strike, the movant must establish that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant."*Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (quotation marks and citation omitted); *see also Lipsky*, 551 F.2d at 893 (stating that "a Rule 12(f) motion to strike allegations claimed to be impertinent or immaterial "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible" (collecting cases)).

> Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone.

*Id.* at 893.

Courts have noted that "[i]nappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates." *Saylavee LLC v. Hockler*, 228 F.R.D. 425, 426 (D. Conn. 2005). "Concerns that a jury may be prejudiced by allegations in a complaint are also insufficient [to grant a motion to strike], as the Court does not submit pleadings to a jury in civil cases." *Britt v. Buffalo Mun. Hous. Auth.*, No. 06-CV-00575(SR), 2008 WL 4501929, at *1 (W.D.N.Y. Sept. 30, 2008) (citations omitted).

Here, Defendant contends that paragraphs 11 and 13 of Plaintiff's complaint contain references to settlement discussions and conduct that occurred during the mediation of a prior

administrative proceeding. Paragraph 11 alleges, in substance, that the parties previously engaged in settlement discussions, and an offer for a sum certain was extended by Defendant and was rejected by Plaintiff. Paragraph 13 alleges that the CHRO investigation provided Plaintiff with certain information related to potential damages; it also alleges that Defendant extended a monetary settlement offer which was rejected on the basis of that information.

Rule 408 of the Federal Rules of Evidence prohibits evidence of "(1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim . . . ." Fed. R. Evid. 408(a). Because "settlement discussions are inadmissible to show fault" under Rule 408, they "may be stricken from a complaint as immaterial and potentially prejudicial." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992), *aff'd sub nom.*, *Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994); *see also Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F. Supp. 1226, 1241 (S.D.N.Y. 1995) ("Evidence of settlement negotiations is generally not admissible." (collecting cases)).

The Court agrees that the handwritten information in paragraphs 11 and 13 of the form complaint regarding, specifically, Defendant's monetary offer and Plaintiff's rejection of that offer would be inadmissible and therefore may be stricken from the complaint. *See Smith v. New Line Cinema,* No. 03-CV-5274(DC), 2004 WL 2049232, at *5 (S.D.N.Y. Sept. 13, 2004) ("The references in the complaint to monetary amounts allegedly offered to settle [plaintiff's] claims are therefore stricken from the complaint pursuant to Fed. R. Civ. P. 12(f).").

However, the Court declines to strike the typed information at paragraph 11, or the first part of Plaintiff's allegation, that the "CHRO tried to mediate the dispute between [plaintiff] and the

defendant." Doc. 1 at 4, ¶ 11. At this early stage in the proceedings, the Court cannot conclude that

no evidence in support of this allegation would be admissible for some other purpose, such as "to

establish an independent violation . . . unrelated to the underlying claim," or to prove "bias or

prejudice of a witness." *Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*,

No. 3:03-CV-222(JBA), 2004 WL 2381719, at *6 (D. Conn. Sept. 30, 2004) (quotation marks and

citations omitted).

The same is true for the allegations contained in paragraph 13 of the form complaint, which

relate to Plaintiff's correspondence with the CHRO investigator. Because the Court can conceive of

possible circumstances in which evidence supporting this allegation may be admissible, and based

on the Second Circuit's narrow standard with respect to motions to strike, the Court will allow this

allegation to stand. *See Kasper v. City of Middletown*, 352 F. Supp. 2d 216, 226 (D. Conn. 2005)

(finding CHRO correspondence admissible evidence under what is now Fed. R. Evid. 803(8)(A)(iii),

noting that "[w]hile state agencies' conclusions are not binding upon federal courts, federal courts

certainly may consider secondary facts contained in a state agency's record, since that record itself

is a mandatory prerequisite to filing a Title VII claim").

Finally, Defendant seeks to strike the documents attached to Plaintiff's complaint as exhibits.[4]

As previously noted, the exhibit contains Plaintiff's medical records and a document that appears to

---

[4] Plaintiff filed his *pro se* complaint on February 16, 2018. Doc. 1. On April 13, 2018, exhibits were filed by the Clerk's Office on Plaintiff's behalf. Doc. 16. The exhibits are accompanied by a letter from Plaintiff, requesting the Clerk's Office to "please attached these documents with my original complain. Those relating to my complain." Doc. 16 at 1 (sic). The documents consist of five pages of medical records, the first of which is dated December 12, 2016, *id.* at 2, and a "Personnel Action Report" dated May 9, 2016. *Id.* at 7. The Court will treat these exhibits as though they had been filed contemporaneously with and attached to Plaintiff's complaint on February 16, 2018.

be a disciplinary notice from Defendant to Plaintiff. Rule 10(c) of the Federal Rules of Civil Procedure provides that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). A document satisfies the definition of a "written instrument" for the purposes of Rule 10(c) where it "evidences legal rights or duties or sets forth the legal basis for [a plaintiff's] claims." *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015). "To be sure," however, courts permit "consideration of other documents, apart from written instruments under Rule 10(c), at the motion to dismiss stage, such as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Id.* (quotation marks and citation omitted). "Further, . . . a court may consider an integral document where the complaint relies heavily upon its terms and effect." *Id.* (quotation marks and citation omitted).

Here, Plaintiff, who is proceeding *pro se*, appears to have attached the documents at issue to his complaint in an effort to support his claims. The complaint references the content of the documents. It is also clear to the Court that said documents may be admissible, have a bearing on the issues on the case, and do not appear to prejudice Defendant. *Roe*, 151 F. Supp. 2d at 510. Based on the foregoing, the Court declines to strike the exhibits to the complaint. Accordingly, Defendant's motion to strike will be granted in part, and denied in part.

**B.      Motion to Dismiss**

The Court now addresses Defendant's motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). In support of dismissal, Defendant contends that the complaint contains several allegations that are time-barred under Title VII. Defendant also argues that the complaint fails to state a claim for discrimination or harassment in violation of Title VII. Plaintiff, proceeding *pro se*, has submitted opposition, contending that his complaint raises plausible claims for discrimination,

harassment, and constructive discharge sufficient to survive Defendant's motion to dismiss.

Claims alleging employment discrimination under Title VII are analyzed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to this framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case." *Coltin v. Corp. for Justice Mgmt., Inc.*, 542 F. Supp. 2d 197, 203 (D. Conn. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 802-04) (quotation marks omitted).

"The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) . In *Swierkiewicz*, the Supreme Court held that a plaintiff asserting disparate treatment claims pursuant to, *inter alia*, Title VII need not allege "specific facts establishing a prima facie case of discrimination" under the *McDonnell Douglas* framework to survive a motion to dismiss. *Id.* at 508. To require otherwise, the Court explained, would "conflict[] with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 512.

Applying that standard to the facts of the case, the Court found that the plaintiff had "easily" satisfied  the requirements of Rule 8(a), and had stated a claim upon which relief could be granted, where he had

> alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA. His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination.

*Id.* at 514.

The minimum pleading standard for Title VII complaints remains "uncertain" following the Supreme Court's decisions in *Twombly and Iqbal. Littlejohn v. City of New York,* 795 F.3d 297, 310 (2d Cir. 2015) (noting that "[i]t is uncertain how the Supreme Court will apply *Iqbal's* requirement of facts sufficient to support plausibility to Title VII complaints falling under the McDonnell Douglas framework"; and holding that "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation").

However, after *Twombly*, the Second Circuit decided *Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008), a case involving a *pro se* plaintiff alleging disparate treatment. The Court held that "even after *Twombly*," where the complainant is proceeding *pro se*, "departure from Rule 8(a)'s liberal pleading standard [is] particularly unwarranted." *Id.* at 215. In vacating the district court's dismissal of the plaintiff's claims, the Second Circuit reaffirmed the duty to construe a *pro se* complaint more liberally, and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 214 (quotation marks and citation omitted). The Court then found that Boykin's simple allegations indicated "the possibility of discrimination" and therefore presented "a plausible claim of disparate treatment." *Id.* at 215-16. It found that the complaint gave the defendant notice of the plaintiff's claim "and the grounds upon which it rests that is sufficient to satisfy Rule 8(a)." *Id.* at 216. The Court concluded:

> We emphasize that we are expressing no opinion regarding the merits of Boykin's claim. And that is precisely the point: even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases. The merits of a claim like Boykin's, which on its face presents a plausible allegation of disparate treatment, should be tested on summary judgment.

*Id.* (footnote omitted).

Following *Boykin*, the Second Circuit has reiterated that "a plaintiff alleging retaliation or discrimination does not need to state a prima facie case to survive a motion to dismiss so long as they plausibly allege facts that give rise to an inference of retaliation or discrimination." *Padilla v. Yeshiva Univ.*, 691 F. App'x 53 (2d Cir. 2017). *See also Littlejohn*, 795 F.3d at 311 ("[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.").

With these principles in mind, the Court turns to the arguments raised in support of dismissal.

1. <u>Timeliness</u>

Defendant argues that certain conduct that forms the basis of Plaintiff's complaint is time-barred. Specifically, Defendant contends that under Title VII, the conduct alleged to be discriminatory that occurred more than 300 days before Plaintiff filed an EEOC charge is barred from consideration in connection with Plaintiff's claims.

Title VII requires claimants to file a charge of discrimination or retaliation with the EEOC within 300 days of the acts claimed to be discriminatory or retaliatory. 42 U.S.C. §2000e-5(e)(1). "To determine the timeliness of an EEOC complaint and an ensuing lawsuit, the court must identify the dates on which the alleged discriminatory acts took place." *Coger v. Connecticut*, 309 F. Supp. 2d 274, 282 (D. Conn. 2004), *aff'd sub nom.*, *Coger v. Connecticut Dep't of Pub. Safety*, 143 F. App'x 372 (2d Cir. 2005). Title VII precludes recovery for discrete acts of discrimination that occurred outside the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105

(2002).

Pursuant to the continuing violation exception to the limitations period of Title VII, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (quotation marks and citation omitted); *see also Sullivan v. NYC Dep't of Investigation*, 163 F. Supp. 3d 89, 98 (S.D.N.Y. 2016) ("[T]he continuing violation exception . . . allows for acts that would otherwise be time-barred to be considered 'where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994))), *reconsideration denied sub nom.*, *Sullivan v. New York City Dep't of Investigation*, No. 12-CV-2564, 2016 WL 7106148 (S.D.N.Y. Dec. 6, 2016), *appeal dismissed* (May 2, 2017). "In such continuing discrimination cases, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Coger*, 309 F. Supp. 2d at 283 (quotation marks and citation omitted). Ultimately, it is "[t]he nature of the claim [that] determines whether earlier conduct will be given consideration." *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010) (quotation marks and citation omitted).

"To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson*, 375 F.3d at 200. Importantly, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to

a continuing violation." *Cetina v. Longworth*, 583 F. App'x 1, 3 (2d Cir. 2014) (quotation marks and citation omitted).

Plaintiff alleges discriminatory conduct that commences in 2004, and discusses specific instances of such conduct occurring in 2009, December 2015, May 2016, December 2016, and February 2017. Plaintiff's complaint contains allegations that Plaintiff filed charges with the CHRO and the EEOC on January 19, 2017, and again on August 1, 2017. Doc. 1 ¶¶ 15, 18. Ordinarily, under Title VII, any discriminatory acts that are alleged to have occurred prior to March 25, 2016, – 300 days prior to January 19, 2017, the date of the filing of Plaintiff's first EEOC charge – would be time-barred. *See* 42 U.S.C. § 2000e-5(e)(1). Defendant embraces this position in support of dismissal, arguing that the complained-of conduct prior to March 25, 2016, are discrete acts that "should not be considered by this Court under a continuing violation doctrine." Doc. 22-1 at 19.

However, Plaintiff's *pro se* complaint, read with the requisite liberality, asserts a claim of ongoing "harassment," more commonly termed a hostile work environment claim. The Supreme Court has held that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115 (citation omitted).

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 117 (footnote omitted). *See also Patterson*, 375 F.3d at 220 ("A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory

period; if it did, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." (quotation marks and citation omitted)); *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) ("[I]n the case of a hostile work environment claim, the statute of limitations requires that only one . . . harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider the entire time period of the hostile environment in determining liability.").[5]

In the case at bar, Plaintiff alleges that he was subjected to an ongoing hostile work environment over the course of several years. The incidents he recites were perpetrated by the same supervisors. He alleges that such ongoing harassment ultimately resulted in his constructive discharge. In connection with his hostile work environment claim, Plaintiff has alleged several acts contributing to this claim that fall within the statutory time period: the unwarranted reprimand issued in May 2016; the raise of December 2016; and the incidents involving his supervisor and Human Resources in December 2016. The Court finds that the events alleged to have occurred prior to the 300-day limitations period may be considered as timely in connection with Plaintiff's hostile work environment claim. *See Morgan*, 536 U.S. at 120 (affirming that the otherwise untimely incidents were part of an actionable hostile work environment claim, and therefore not time-barred, where the "incidents involved the same type of employment actions, occurred relatively frequently, and were

---

[5] I note that Defendant's papers make no mention of this well-established exception to Title VII's statute of limitations, despite acknowledging that "Plaintiff alleges that he was subject to *a pattern of discriminatory and harassing treatment* as far back as 2004 . . . ." Doc. 22-1 at 18 (emphasis added), and despite expressly acknowledging that Plaintiff's complaint raises a hostile work environment claim, and arguing for its dismissal. Defendant's failure to address this meritorious exception is particularly striking in light of Plaintiff's *pro se* status.

perpetrated by the same manager").[6]

Accordingly, the Court will deny Defendant's motion to dismiss the pre-2016 conduct as time-barred.

2. Failure to State a Claim

In relevant part, Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a claim of discrimination, a plaintiff must allege that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir.2015).

Defendant does not dispute that Plaintiff has alleged that he is a member of a protected class, and was qualified for his position as a gas station manager. Instead, Defendant contends that Plaintiff has failed to allege facts demonstrating that he suffered an adverse employment action, and has not sufficiently alleged facts that give rise to an inference of discriminatory intent. Finally, Defendant argues that Plaintiff has failed to plausibly allege that he was subjected to a hostile work environment. The Court will address each argument in turn.

a.     Adverse Employment Action

First, the Court considers whether Plaintiff has alleged that he suffered an adverse

---

[6] The Court also notes that any "time-barred conduct may still be offered as evidence of discriminatory intent to support timely claims." *Nakis v. Potter*, 422 F. Supp. 2d 398, 410 (S.D.N.Y. 2006) (citing *Morgan*, 536 U.S. at 113).

employment action. "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation marks and citation omitted). The Second Circuit has noted that a materially adverse change could include such events as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* "An adverse employment action may also take the form of a constructive discharge, which occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 59 (2d Cir. 2014) (quotation marks and citation omitted).

Here, Plaintiff alleges that he was constructively discharged. "Title VII encompasses employer liability for a constructive discharge." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004). In addition to alleging behavior "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.* at 146–47, a plaintiff advancing a claim that he was constructively discharged due to a hostile work environment "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Id.* at 147 (collecting cases); *see also Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 243 (S.D.N.Y. 2017) ("Work conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." (quotation marks and citation omitted)). Such harassment "may be effected through co-worker conduct, unofficial supervisory conduct, or official company act." *Pennsylvania State Police*, 542 U.S. at 148. "The Second Circuit has recognized that a constructive discharge claim can be premised on the cumulative

effect of a number of adverse conditions in the workplace." *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 404 (D. Conn. 2017) (quotation marks omitted) (quoting *Terry*, 336 F.3d at 153 n.24).

The complaint contains allegations that, due to his national origin: Plaintiff was forced to sign paperwork against his will; he was falsely accused of impropriety and poor work performance; was denied bonuses; he was publicly insulted, yelled at, and humiliated; his supervisor swore at him, threatened him, and threw his medications on the floor; and he was told by Human Resources that his supervisor could "do anything" to him. These allegations, if true, sufficiently establish that the conditions of Plaintiff's employment were altered; that he was subjected to an abusive working environment; and that Defendant intentionally subjected Plaintiff to such harassing conditions that a reasonable person would have felt compelled to resign. Assuming, as I must in this matter, the truth of Plaintiff's allegations, and mindful of my obligation to construe Plaintiff's complaint liberally, I conclude that Plaintiff has plausibly alleged that he was constructively discharged, and has therefore suffered an adverse employment action.[7]

---

[7] Plaintiff's hostile work environment claim is based on the same facts as his claim for constructive discharge. This type of constructive discharge claim, characterized by the Supreme Court as "compound," *see Pennsylvania State Police*, 542 U.S. at 147, "requires that a plaintiff sufficiently allege a hostile work environment in order to adequately allege a constructive discharge claim." *Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 243 (S.D.N.Y. 2017) (citation omitted).

> For an atmosphere of . . . hostility to be actionable, . . . the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.

*Pennsylvania State Police*, 542 U.S. at 146–47 (quotation marks and internal citations omitted). As the Court has found that Plaintiff has plausibly alleged a constructive discharge claim, his hostile work environment claim based on the same facts necessarily survives dismissal.

b.      Inference of Discrimination

Next, Defendant argues that Plaintiff's complaint does not allege circumstances giving rise to an inference of discrimination. Defendant contends that a causal connection between Defendant's conduct and Plaintiff's membership in a protected class has not been sufficiently alleged.

The Second Circuit has made it clear that "the evidence necessary to satisfy the initial burden of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is minimal." *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) (quotation marks and citation omitted). As noted above, the *Littlejohn* court explained that the "facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 311. *See also Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) ("[A]t the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim[.]" (footnote omitted) (collecting cases in which the Second Circuit has recently vacated dismissals on appeal)).

Here, the self-represented Plaintiff alleges that he is of Pakistani descent; he worked in his position since 1999; on specific dates, he was subjected to harassing treatment from his supervisor; he was treated differently than other, "American" employees; and such treatment was due, "upon information and belief," to his national origin.[8]  Plaintiff has provided the dates of the conduct

---

[8] Defendant takes issue with Plaintiff pleading this fact "on information and belief," Doc. 22-1 at 29, but the Court notes the Second Circuit has held that "[p]leading on the basis of information and belief is generally appropriate under such circumstances." *Boykin*, 521 F.3d at 215 (citations omitted).

leading to the end of his employment with Defendant, and has alleged that Defendant's non-Pakistani employees were treated differently. These allegations are sufficient to give Defendant notice of Plaintiff's claims under Rule 8(a), and satisfy this *pro se* plaintiff's burden to plead a minimal plausible inference of discriminatory intent. *See Padilla*, 691 F. App'x at 55 (in an employment discrimination matter, stating that "[s]ince a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff need only allege enough facts to raise a right to relief above the speculative level and state a claim to relief that is plausible on its face."); *Boykin*, 521 F.3d at 215 (finding that a *pro se* complaint alleging disparate treatment was "sufficient to give [the defendant] fair notice of her claim and the grounds upon which it rests" where the plaintiff "identified the particular events giving rise to her claim and alleged that she was treated less favorably than other loan applicants because of her race, her gender and location of her property"). *See also Velazquez v. City of New York*, No. 16-CV-9606(ALC), 2017 WL 6948357, at *8 (S.D.N.Y. Dec. 13, 2017) (finding allegations of discriminatory intent sufficient, noting that "a complaint's merely alleging protected status, identifying the adverse employment action underlying Plaintiff's discrimination claim, stating that she was treated differently than certain employees due to her race, and identifying those employees by name, as Plaintiff has done here, has sufficed for some district courts to provide adequate notice of a claim").

The Court finds that Plaintiff has plausibly alleged that he has suffered an adverse employment action, and has sufficiently alleged facts giving rise to an inference of discrimination. Plaintiff has also alleged valid claims for hostile work environment and constructive discharge. Accordingly, the Defendant's motion to dismiss will be denied.

**IV.      CONCLUSION**

For the foregoing reasons, Defendant's *Motion to Strike is* GRANTED IN PART and DENIED IN PART. The handwritten information in paragraphs 11 and 13 of the form complaint, Doc. 1 at 4 ¶¶ 11, 13,  regarding, specifically, Defendant's monetary offer and Plaintiff's rejection of that offer will be stricken from the complaint. Defendant's *Motion to Dismiss* is DENIED.

It is SO ORDERED.

Dated: New Haven, Connecticut
           August 30, 2018

                                                                      */s/ Charles S. Haight, Jr.*
                                                                      CHARLES S. HAIGHT, JR.
                                                                      Senior United States District Judge